2026 IL App (1st) 232388-U

Fourth Division
Filed August 6, 2026

No. 1-23-2388

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | Appeal from the |
| Plaintiff-Appellee, | Circuit Court of Cook County |
| v. | No. 02 CR 10497 |
| ZACHERY EVANS, | The Honorable Tiana S. Blakely, |
| Defendant-Appellant. | Judge Presiding. |

JUSTICE OCASIO delivered the judgment of the court.
Justices Lyle and Quish concurred in the judgment.

**ORDER**

¶ 1    *Held*:   (1) Defendant failed to show prejudice from trial counsel's elicitation of incriminating testimony in light of the evidence of guilt; thus, appellate counsel was not ineffective for failing to raise the claim; (2) postconviction counsel substantially complied with rule governing postconviction counsel's duties; and (3) defendant failed to establish unreasonable assistance of postconviction counsel, as he did not allege supporting facts and cannot rely on speculation. Affirmed.

¶ 2    Following a bench trial, defendant Zachery Evans was found guilty of attempted first-degree murder and armed robbery. He was originally sentenced to 61 years, later reduced to 51 years of imprisonment after resentencing.

¶ 3    Evans is appealing after his postconviction petition was dismissed at the second stage. He claims that mistakes made during his postconviction proceeding, along with inadequate legal representation, infringed upon his constitutional rights.

¶ 4                                    I. BACKGROUND

¶ 5                                A. Pretrial Proceedings

¶ 6        Multiple attorneys worked on Evans' case. On May 20, 2004, attorney Earl Washington called for a Rule 402(d) conference. Ill. S. Ct. R. 402(d) (eff. July 1, 1997). On the following court date, Evans told the court he no longer wanted Washington as his lawyer, so a public defender was assigned to represent him.

¶ 7        On November 22, 2004, the State requested admonishments pursuant to *People v. Curry*, 178 Ill. 2d 509 (1997), after Evans rejected its offer of a total of 20 years of imprisonment for attempted murder and armed robbery. The assistant state's attorney stated, on the record, as follows:

> "The defendant—because of the nature of the charge, the defendant is eligible for a 6- to 30-year sentence on the attempt murder or aggravated battery with a firearm to be served in [*sic*] 85 percent, and a mandatory consecutive sentence of 6 to 30 years on the armed robbery because it's a Class X committed and severe bodily injury was inflicted by the use of a gun, the defendant must receive a mandatory consecutive sentence of 25 years to life, which would mean that the minimum sentence of this defendant was looking at is 6 plus 6 plus 25 to life or 37 years.
>
>     I offered him an offer of 20 years at 85 percent which would have been on the attempt murder or aggravated battery with the firearm charge, and the defendant chose to reject that. So, I just wanted to put on the record what the defendant is facing, a minimum of 37 years if he were to lose."

Evans' trial counsel affirmed that she had informed him of the applicable sentencing range. Furthermore, the court inquired whether Evans comprehended that the sentences were mandatory consecutive terms, to which he acknowledged his understanding.

B. Bench Trial

¶ 8    This case arose from a shooting that occurred on April 4, 2002, in an alley in Chicago Heights.

¶ 9    At the trial, the State's evidence showed that Kenneth Simmons, Latanya Maxwell, Keionna James, and Shelley Magby had driven to a two-story apartment to purchase cannabis. Latanya went to the building, and while waiting in the car, Simmons was counting approximately $900. Latanya noticed Alvin Maxwell and Evans standing in the alley; she recognized Evans because he was her niece's father. Latanya returned to the car because the dealer did not respond. Simmons wanted to go see for himself, so he and Latanya went back to the apartment building. Simmons testified he began to have a bad feeling about the men in the alley and walked back to the car. Simmons identified Evans in court as the person he saw in the alley. As Simmons walked back towards the car, he passed Evans, who shot him in the face, chased him, fired multiple additional shots as Simmons attempted to flee and later lay injured behind a fence. While Simmons was wounded, Evans searched his pockets and took his money. Evans attempted to shoot Simmons again, but the gun misfired. Simmons survived despite sustaining multiple gunshot wounds requiring surgery.

¶ 10   Latanya testified that after the shooting she fled in her car and drove to her mother's house. Latanya told her mother that Evans killed Simmons. Her mother informed authorities and Latanya returned to the scene with Chicago Heights officers. The officers brought Evans to her with another man and Latanya identified Evans as the shooter.

¶ 11   On April 5, 2002, the following day after his surgery, Detective Alessandrini met Simmons at St. James Health Olympia hospital and showed him a photo array. Simmons selected a picture of Evans. The same day, Simmons viewed a second photo array but was unable to make any further identifications.

¶ 12   Alvin testified that on the day of the incident, he was with Evans and other individuals at a friend's house. They arrived at the apartment but had to wait outside, so they went into the alley. He observed a car with four individuals arriving at the address. He observed Evans looking in the direction of the car parked. Alvin saw the interior light of the car was on and a male counting money. Alvin saw Simmons and Latanya exit the vehicle and go up the building stairs. After they

came back down, Alvin heard gunshots and saw Simmons fall. Evans was one foot away from Simmons. Alvin testified that he and Evans both walked to Simmons, and he saw him "balled up" and he ran. Alvin and Evans ran back to the friend's house they were originally at. Evans then started to count money at the table and then left the house to go to the gas station. Before getting to the gas station, police stopped the vehicle, arrested them and recovered cash.

¶ 13          During cross-examination, defense counsel elicited the following testimony from Alvin:

"Q. *** And then you say Zachery just made a statement. Hmm?

A. Yeah.

Q. He just said: Man, you didn't think I was going to do it.

A. Well, I said, I said, 'What the hell are you doing,' first. And then he said that.

Q. He said: Man, you didn't think I was going to do it. Had you talked about something prior to that?

A. No. He had mentioned when he seen the guy with the money counting, he said: I'm going to get him. But I didn't take it seriously."

¶ 14          Defense counsel subsequently motioned for a mistrial, explaining that, shortly prior to trial the State disclosed Alvin made a statement that was not tendered to the defense. Specifically, the statement was that Evans told Alvin, "I'm going to get him" prior to the shooting. The State represented to the court that Alvin was directed not to testify to that statement. Defense counsel argued that the defense had relied on that assurance, but the statement was nevertheless extracted causing unwarranted prejudice demanding a mistrial. The trial court denied the motion for a mistrial, reasoning that "you can't ask a question that you know that you don't want the answer to and expect it not to be answered."

¶ 15          Melvenna Pope was not a witness to the shooting, but on April 5, 2002, she found a gun on her porch. She contacted the Chicago Heights police department. Detective Robert Evans retrieved a .22 caliber revolver at her residence. Melvenna had seen Evans with that particular gun before.

¶ 16    The State also presented forensic evidence. Detective Robert Evans recovered two spent projectiles that were removed from Simmons' body. However, forensic testing could not conclusively match the bullets to that weapon.

¶ 17    Before the State rested, it moved to admit its exhibits. Defense objected to admitting the gun, arguing no one saw Evans with it and ballistics couldn't link it to the bullets. The court allowed the gun, finding enough evidence to tie it to the crime.

¶ 18    In closing argument, the defense argued that Alvin was the shooter, not Evans. Defense argued that there was a lack of forensic evidence linking Evans to the gun. Defense counsel also noted that the bullets could not be matched to the gun and no gunpowder residue or fingerprints tied Evans to it, suggesting such evidence would have been presented if it existed.

¶ 19    The trial court found the eyewitness testimony credible and relied in part on Evans' statements as evidence of intent, ultimately finding him guilty of attempted first-degree murder and armed robbery.

¶ 20    Evans was sentenced to 30 years of imprisonment for attempted murder, six years of imprisonment for armed robbery, and a firearm enhancement of 25 years of imprisonment. The sentences were to be served consecutively.

¶ 21    Evans filed a motion to reconsider sentence. On September 8, 2005, the court heard Evans' motion and reported that it was troubled by the fact that the sentencing range for armed robbery was greater than for attempted murder. The court denied the motion to reconsider sentence.

¶ 22                                C. Direct Appeal

¶ 23    On direct appeal, Evans argued that his sentence for armed robbery, which included a 25-year firearm enhancement, constituted a violation of the proportionate penalties clause of the Illinois Constitution. He claimed that the offense shared identical elements with armed violence involving the personal discharge of a firearm causing great bodily harm yet was subject to a more severe penalty. Additionally, Evans asserted that his 30-year sentence for attempted murder resulted from

the trial court's erroneous belief that attempted murder was the more serious offense. This court subsequently remanded both convictions for resentencing.

¶ 24                            D. Resentencing and Appeal

¶ 25        On October 21, 2008, the trial court resentenced Evans to consecutive incarceration terms of 30 years for attempted murder, with 15-year firearm enhancement, and six years for armed robbery. Evans filed a motion to reconsider his new sentence, but the court denied it, and he appealed again. This court affirmed Evans' new sentence but modified Evans' sentencing credit.

¶ 26                            E. Postconviction Proceedings

¶ 27        On February 20, 2014, Evans filed an initial *pro se* postconviction petition which he captioned as "Leave to file a successive postconviction petition." Evans alleged his petition was untimely because Illinois Department of Corrections (IDOC) failed to place him in school and therefore he did not understand the legal issues and filing rules.

¶ 28        Evans' *pro se* petition alleges several grounds of ineffective assistance of counsel. First he claimed that his trial counsel was ineffective for: (1) failing to demonstrate that key forensic tests, specifically a ballistic test, gunpowder residue test, and crime scene analysis, were not conducted, which he argued would have established his innocence; (2) failing to call witnesses who could have supported his innocence; (3) abandoning the strategy of prior defense counsel, who had sought a 10-year plea offer, and instead proceeded to trial for personal gain; (4) failing to file a motion to quash his arrest; (5) failing to inform him of the applicable sentencing ranges; and (6) failing to raise a one act, one crime argument at sentencing.

¶ 29        Evans further asserted that his appellate counsel was ineffective for: (1) failing to argue trial counsel was ineffective for not filing a motion to quash arrest, and (2) failing to raise the one act, one crime issue on appeal.

¶ 30        Finally, Evans contended that under 725 ILCS 5/122-1(f) his postconviction petition was untimely due to his limited education and inability to complete necessary schooling while on the IDOC waitlist.

¶ 31   Evans attached two correspondences to his *pro se* petition, a letter from a correctional counselor stating he was waitlisted for school and a letter from the Regional Office of Education stating that the office does not provide GED Adult literacy classes.

¶ 32   Evans' petition was entered on the trial court docket on May 2, 2014, at which point a public defender was appointed to represent him. His case was continued as it was handed off to several attorneys from the public defender's office. Ultimately, postconviction counsel Walter Pazera filed a Rule 651(c) certificate on August 9, 2021. See Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

¶ 33   Postconviction counsel also filed a six-page supplemental petition for postconviction relief which included new claims and two exhibits. The supplemental petition alleged trial counsel was ineffective for several reasons: (1) abandoning prior counsel's effort to secure a reduced sentence during a Rule 402(d) conference and instead proceeding to trial despite what was described as "overwhelming" evidence of guilt; (2) failing to file a motion to suppress evidence obtained from an alleged improper traffic stop that led to Evans' arrest; and (3) eliciting harmful testimony from Alvin, who stated during trial that Evans had said, "I'm going to get him," before the shooting.

¶ 34   The petition further asserted that appellate counsel was ineffective for (1) failing to argue that trial counsel was ineffective for not filing a motion to suppress evidence based on the improper traffic stop and (2) failing to argue that trial counsel was ineffective for eliciting harmful testimony from Alvin.

¶ 35   On October 26, 2021, the State filed a motion to dismiss Evans' petition. The State argued that Evans' *pro se* postconviction petition was untimely and that the deadline to file his *pro se* petition was September 24, 2011. The State further argued Evans' claims of ineffective assistance of counsel lacked merit for several reasons. It noted that neither Evans nor his postconviction counsel identified any specific witnesses or their potential testimony, and that the proposed 10-year sentence was below the legal minimum for attempted murder. The State noted that the record showed that Evans was offered a 20-year sentence, was fully informed of the sentencing range, and chose to decline the offer. Additionally, the traffic stop leading to his arrest was lawful, and Evans failed to provide evidence supporting claims that forensic or ballistic testing could prove

his innocence. Finally, given the evidence, Evans could not demonstrate prejudice from counsel introducing his incriminating statement. The State further argued that Evans' claims of ineffective assistance of appellate counsel also failed, since they were based on the same meritless arguments regarding trial counsel.

¶ 36    On February 10, 2022, postconviction counsel filed a response opposing the State's motion to dismiss, arguing that Evans provided sufficient facts showing his delayed *pro se* postconviction petition was not due to his culpable negligence. The response included a January 14, 2022 affidavit in which Evans stated that his sentence was affirmed on September 7, 2010, and that he filed his petition on January 29, 2014. He attributed the delay to limited education, lack of funds for legal assistance, repeated lockdowns that restricted access to the law library, and his confinement in segregation, which prevented him from obtaining legal assistance.

¶ 37    On November 17, 2023, the trial court heard arguments on the briefs to dismiss. Evans and the State argued consistently with their written submissions.

¶ 38    The trial court dismissed the petition finding that it was untimely therefore procedurally barred and found that Evans did not show that he lacked culpable negligence that would excuse his untimeliness. The court stated:

> "Mr. Evans cites several reasons for his untimeliness, including lack of education, lack of funds to obtain additional legal assistance, lockdowns at Menard Correctional Facility and his confinement in solitary segregation and is being on restrictions preventing him from seeking legal assistance.
>
> Knowledge of time requirements for filing a post-conviction petition rests with the petitioner. Ignorance of the law is not an excuse. While defense counsel cites the lack of education, it's clear that it was sufficient to, in fact, prepare a post-conviction petition.

* * *

There is no detail in his affidavit regarding the timing and duration of those lockdowns or the date when he began trying to access the law library during this three-year time frame in which he didn't file. There is no detail regarding defendant's request or denial of education, schooling, whether GED classes or college courses were sought out or offered.

\* \* \*

The defendant must make a substantial showing by alleging facts demonstrating that to be the case. Mr. Evans did not do that. A general statement of excessive lockdowns without records or supporting documentation will not suffice. Lastly, being restricted and on solitary confinement absent any further details regarding dates over the three-year time frame is not enough. Furthermore, the court cannot determine whether the defendant's placement in solitary confinement was not caused by the defendant's own actions."

¶ 39    This appeal follows.

¶ 40                              II.  ANALYSIS

¶ 41    On appeal, Evans raises two main arguments: ineffective assistance of trial and appellate counsel and unreasonable assistance by postconviction counsel. Evans argues that trial counsel elicited incriminating testimony that undermined the defense, while appellate counsel failed to raise error on direct appeal, satisfying the standard under *Strickland v. Washington*. Additionally, Evans contends that postconviction counsel failed to adequately amend and support the petition as required by Illinois Supreme Court Rule 651 (c). The petition was also dismissed as untimely, though Evans attributes the delay to limited education and restricted access to prison resources.

¶ 42　　　　　　　　　A. Ineffective Assistance from Trial and Appellate Counsel

¶ 43　　　First, Evans argues that the trial court erred in dismissing his postconviction petition at the second stage. He contends that his petition made a substantial showing that his trial counsel was ineffective for eliciting incriminating testimony that the State had agreed to not use; Evans contends that this statement directly supported the element of intent and contradicted the defense strategy. Appellate counsel, in turn, failed to raise this issue on direct appeal. Evans argues that these failures satisfy the standard for ineffective assistance under *Strickland v. Washington* and warranted advancement to an evidentiary hearing.

¶ 44　　　The Illinois Post-Conviction Hearing Act (Act) provides a process by which a criminal defendant may challenge his or her conviction. 725 ILCS 5/122-1 *et seq.* (West 2010). A postconviction petition is a collateral attack on a prior conviction, *People v. Simms*, 192 Ill. 2d 348, 359 (2000), and is limited to constitutional issues which were not and could not have been raised on direct appeal. *People v. King*, 192 Ill. 2d 189, 192-93 (2000). The Act provides a three-stage process by which defendants may collaterally challenge their convictions. *People v. Young*, 2022 IL App (1st) 210534, ¶ 38. During the first stage, the trial court has 90 days to summarily dismiss any frivolous and non-meritorious claims. *People v. Pendleton*, 223 Ill. 2d 458, 472-73 (2006). If the court does not rule on the petition within 90 days, then it proceeds to the second stage.

¶ 45　　　During the second and third stages of a postconviction proceeding, the defendant bears the burden of making a substantial showing of a constitutional violation. *Pendleton*, 223 Ill. 2d at 473. At the second stage of proceedings, all well pleaded facts not affirmatively rebutted by the trial record are accepted as true. *Id*. If the trial court dismisses the petition at this stage, we review that decision *de novo*. *People v. Childress*, 191 Ill. 2d 168, 174 (2000).

¶ 46　　　In examining Evans' claims of ineffective assistance of counsel, this court follows the two-pronged test of *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under this standard, Evans must show that counsel's representation fell below an objective standard of reasonableness, and that but for this deficiency, there is a reasonable probability that counsel's performance was prejudicial to the defense. *People v. Hickey*, 204 Ill. 2d 585, 613 (2001). "Prejudice exists when

'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *People v. Erickson*, 183 Ill. 2d 213, 224 (1998). A petitioner's failure to make the requisite showing of either deficient performance or sufficient prejudice defeats a claim of ineffectiveness. *People v. Morgan*, 187 Ill. 2d 500, 529-30 (1999).

¶ 47    Significantly, effective assistance of counsel in a constitutional sense means competent, not perfect, representation. *People v. Easley*, 192 Ill. 2d 307, 344 (2000). Notably, courts indulge in the strong presumption that counsel's performance fell within a wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 690. Moreover, "the fact that another attorney might have pursued a different strategy is not a factor in the competency determination." *People v. Palmer*, 162 Ill. 2d 465, 476 (1994) (citing *People v. Hillenbrand*, 121 Ill. 2d 537, 548 (1988)).

¶ 48    Further, counsel's strategic decisions will not be second-guessed. Indeed, to ruminate over the wisdom of counsel's advice is precisely the kind of retrospection proscribed by *Strickland* and its progeny. See *Strickland*, 466 U.S. at 689 ("[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight"); see also *People v. Fuller*, 205 Ill. 2d 308, 331 (2002) (issues of trial strategy must be viewed, not in hindsight, but from the time of counsel's conduct, and with great deference accorded counsel's decisions).

¶ 49    Here, Evans contends that the trial court erred in dismissing Evans' postconviction petition because the amended postconviction petition made a substantial showing that Evans received ineffective assistance of trial and appellate counsel. Evans argues that trial defense counsel was deficient because he elicited barred and incriminating evidence from Alvin. Evans notes that the State had informed trial counsel that Alvin claimed Evans said "I'm going to get him" in reference to Simmons just before the shooting, and because the statement was not tendered to the defense, the State agreed not to use or elicit the statement. The State did not elicit the statement from Alvin; nevertheless, trial counsel elicited the statement during cross-examination. Evans argues that trial counsel eliciting this statement fell below professional standards and prejudiced Evans because the statement did not serve a strategic purpose, given that the defense's strategy was to show that Alvin was the shooter.

¶ 50    We agree with Evans that the cross-examination of Alvin was clumsy and inelegant. Nevertheless, we do not find that this testimony was so prejudicial to warrant reversal given the other evidence establishing Evans' guilt. Evans was identified as the shooter by four different witnesses, including the victim. In addition to eyewitness identifications, Evans' incriminating statement to Alvin, "what do you think I wasn't going to do it?," was properly admitted into evidence during Alvin's direct examination. Accordingly, Alvin's testimony at issue did not affect the outcome of the trial. Evans has not made a substantial showing that he received ineffective assistance of trial counsel, as there is no indication the outcome of the trial would have been different had the statement not been produced at trial. See *People v. Johnson*, 368 Ill. App. 3d 1073, 1086 (2d Dist. 2006) (holding that although defense counsel elicited incriminating testimony, counsel was not ineffective where the testimony was not prejudicial given the overwhelming evidence establishing the defendant's guilt).

¶ 51    Evans also argues that appellate counsel was ineffective for failing to raise the issue of trial counsel's ineffective assistance for eliciting incriminating testimony. A defendant claiming ineffective assistance of appellate counsel must show that counsel's failure to raise an issue was objectively unreasonable and caused prejudice. *People v. West*, 187 Ill. 2d 418, 435 (1999). Counsel need not raise every possible issue and is not ineffective for omitting meritless claims unless the judgment is patently wrong. *Id*. Therefore, courts assess prejudice by examining the underlying issue's merits, since no prejudice arises from failing to raise a nonmeritorious claim. *Simms*, 192 Ill. 2d at 362. We find that since Evans failed to establish prejudice for his underlying claim of ineffective assistance of trial counsel, he cannot show that appellate counsel was ineffective for failing to raise a nonmeritorious claim on appeal.

¶ 52    After considering Evans' allegations regarding ineffective representation by both trial and appellate counsel, we remain unconvinced that trial counsel acted ineffectively. The evidence introduced during the trial was substantial and clearly demonstrated Evans' guilt.

¶ 53                      B. Unreasonable Assistance of Postconviction Counsel

¶ 54        Second, Evans argues that he received unreasonable assistance from postconviction counsel, who failed to properly amend and support the petition. Specifically, counsel did not include necessary affidavits, such as those from Evans, trial counsel, or witnesses; failed to provide specific facts to justify the late filing; and did not restructure claims to avoid procedural bars, such as framing issues as ineffective assistance of counsel. As a result, the argument is that counsel did not meet the obligations imposed by Illinois Supreme Court Rule 651(c), requiring remand for proper second stage proceedings.

¶ 55        At the second stage, counsel may be appointed for an indigent defendant. 725 ILCS 5/122-4 (West 2000). Our supreme court has explained that "[i]n a postconviction proceeding, there is no constitutional right to the assistance of counsel" and, instead, therefore, "the right to counsel is a matter of 'legislative grace.' " *People v. Addison*, 2023 IL 127119, ¶ 19. Under Rule 651(c), appointed counsel must consult with the defendant to determine claims of constitutional deprivation, review the trial record, and amend the petition as necessary to ensure those claims are adequately presented. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). However, this duty does not require counsel to raise frivolous and unfounded claims on the defendant's behalf. *People v. Greer*, 212 Ill. 2d 192, 205 (2004). Instead, postconviction counsel is obligated only to investigate and properly present the petitioner's claims. *People v. Davis*, 156 Ill. 2d 149, 164 (1993). Additionally, a defendant is entitled only to a "reasonable" level of assistance, which is less than the standard guaranteed under the federal or state constitutions. *People v. Munson*, 206 Ill. 2d 104, 137 (2002).

¶ 56        An adequate or proper presentation of a petitioner's substantive claims certainly includes attempting to overcome procedural bars, including timeliness, that will result in dismissal of a petition if not rebutted. *People v. Perkins*, 229 Ill. 2d 34, 44 (2008). Rule 651(c) requires counsel to amend an untimely *pro se* petition by including any available facts showing that the delay was not caused by the petitioner's culpable negligence. *Id*. at 49. To fulfill this obligation, counsel must ask petitioner whether there are any justifications for the late filing, which are often uncovered through direct communication with the petitioner. Additionally, counsel must assert any excuse

evident from the pleadings and from the record that must be reviewed to properly present the petitioner's claims. See *Davis*, 156 Ill. 2d at 164 (holding that, under Rule 651(c), counsel must review those parts of the record necessary to present and support the claims raised in the *pro se* petition).

¶ 57　　Compliance with Rule 651(c) is mandatory and may be shown by a certificate filed by the petitioner's attorney. *Munson*, 206 Ill. 2d at 137. Rule 651(c) provides that postconviction counsel file a certificate stating that he or she "(1) consulted with the defendant to ascertain his contentions of deprivation of constitutional right, (2) examined record of the proceedings at the trial, and (3) amended the defendant's *pro se* petition, if necessary, to ensure that defendant's contentions are adequately presented." *People v. Collins*, 2021 IL App (1st) 170597, ¶ 29. "The filing of a Rule 651(c) certificate gives rise to a rebuttable presumption that postconviction counsel provided reasonable assistance." *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19. "It is defendant's burden to overcome this presumption by demonstrating his attorney's failure to substantially comply with the duties mandated by Rule 651(c)." *Id*. Whether postconviction counsel has complied with Rule 651(c) and provided reasonable assistance are questions we review *de novo. Perkins,* 229 Ill. 2d at 41.

¶ 58　　Here, postconviction counsel filed his Rule 651(c) certificate on August 9, 2021, which stated:

　　　"I Walter J. Pazera, Assistant Cook County Public Defender, certify in accordance with Illinois Supreme Court Rule 651(c) that:

　　　1. I have consulted with the petitioner, Zachery Evans, by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights.

　　　2. I have examined the record of proceedings and/or guilty plea, including the common law record, report of proceedings and any exhibits in possession of the Clerk of the Circuit Court.

　　　3. I have made amendments to the petition filed *pro se*, they are necessary for an adequate presentation of petitioner's contentions."

¶ 59 Evans contends that postconviction counsel rendered unreasonable assistance by failing to adequately support his claims. Specifically, Evans contends that counsel should have substantiated the reasons for his petition's untimely filing and his failure to attach certain affidavits. He asserts that counsel merely presented his conclusory claim that he lacked access to a law library, without providing details about the extent or duration of that limitation or explaining how it prevented him from filing a timely petition. According to Evans, this lack of supporting detail undermined his claim that the untimely filing was not due to his own negligence.

¶ 60 Evans argues that "[a] claim that the petitioner cannot access the law library can show the petitioner was not culpably negligent for a delayed filing." (citing *People v. Upshaw*, 2017 IL App (1st) 151405). In *Upshaw*, the court found that petitioner's untimely filing was not due to culpable negligence because his law library access was restricted. *Id.* That case, however, is distinguishable. There, Upshaw supported his response to the State's motion to dismiss by attaching his affidavits stating that his unit was on lockdown for 179 days, which prevented his access to the library, and prison staff had lost his trial transcripts. Thus, the petitioner in *Upshaw* was able to allege specific facts that prevented timely filing.

¶ 61 In this case, the question becomes whether postconviction counsel satisfies Rule 651(c) when responding to the State's motion to dismiss an untimely petition by relying on Evans' affidavit that contains only conclusory allegations. Rule 651(c) requires counsel to make any amendments necessary to adequately present the petitioner's claims, and thus counsel may be found deficient where he merely reiterates conclusory allegations, such as limited law library access, without adding specific facts needed to overcome the culpable negligence standard, thereby leaving the petition legally insufficient on its face. Ultimately, whether Rule 651(c) is satisfied turns on whether additional factual details were available and could have been included; if so, failure to provide it supports a finding of noncompliance, but if no further facts exist, counsel's performance is deemed sufficient even though the petition is dismissed.

¶ 62 The record shows Evans merely asserted that he lacked access to the library without any evidentiary support or specific allegations of fact to support his statement. Neither in the record

nor his submissions on appeal, despite challenges by the State, is there any indication that there were multiple lockdowns except his own statement. Evans faults counsel for failing to include facts to substantiate his claim that he lacked access to the law library up to the deadline of September 24, 2011. Evans has not demonstrated or even alleged that such supporting facts exist. As our Supreme Court explained, "[a] defendant cannot rely on speculation or conjecture to justify his claim of incompetent representation." *People v. Deleon*, 227 Ill. 2d 322, 337 (2008) (quoting *People v. Pecoraro*, 175 Ill. 2d 294, 324 (1997)). The same reasoning applies to Evans' argument that counsel provided unreasonable assistance for failing to provide details regarding his solitary confinement.

¶ 63 Evans further argues that postconviction counsel provided unreasonable assistance by failing to attach affidavits from Evans and trial counsel explaining counsel's strategy and whether Evans was told he could win on the evidence alone. He contends these affidavits were necessary for the court to assess whether his constitutional rights were violated. Evans also claims postconviction counsel should have included affidavits supporting his argument that trial counsel failed to pursue a 10-year plea offer through a Rule 402(d) conference and failed to advise him that his convictions required consecutive sentences.

¶ 64 Postconviction counsel is not required to amend or support claims that are speculative or contradicted by the record. Here, the record shows no plea offer, no evidence of negotiations, and no indication that Evans would have accepted a plea. The record shows that on May 20, 2004, the case was continued to June 1 at Evans' request without the Rule 402(d) conference occurring. The case was continued again until June 28, when the court learned that attorney Washington intended to withdraw and that Evans no longer wanted that representation. The court then appointed a public defender to represent him. On November 22, 2004, Evans was presented with an offer of 20 years of imprisonment at 85 percent, which he rejected. Although Evans contends that counsel failed to advise him that his convictions required consecutive sentences, the record shows that on the same day he rejected the State's offer, he received admonishments consistent with *Curry*, informing him that his sentences were mandatory consecutive terms. The record further reflects that counsel stated

she explained the sentences to Evans, and the court reiterated those terms, after which Evans indicated he understood. "Where there is not a showing that sufficient facts or evidence exist, inadequate representation certainly will not be found because of an attorney's failure to amend a petition or, when amended, failing to make the petition's allegations factually sufficient to require the granting of relief." *People v. Stovall*, 47 Ill. 2d 42, 46 (1970). Evans offers only speculation that such affidavits would have helped rather than harmed his claim. Moreover, if proposed amendments to a postconviction petition would support a frivolous or meritless claim, they are not considered "necessary" under Rule 651(c) and cannot establish unreasonable assistance. *Greer*, 212 Ill. 2d at 205. Accordingly, counsel did not violate Rule 651(c) by not attaching affidavits to support a meritless plea related claim that is rebutted by the record. *People v. Coleman*, 183 Ill. 2d 366, 385 (1998).

¶ 65    Evans next argues that postconviction counsel provided unreasonable assistance for failing to allege ineffective assistance of appellate counsel. He contends that trial counsel was ineffective for failing to present evidence that a ballistic test, gun powder residue test, and "forensic scene test" were not conducted. Evans contends that appellate counsel should have raised ineffective assistance of counsel on direct appeal.

¶ 66    The trial record indicates that ballistic testing was conducted, and that the trial court was aware that forensic evidence could not confirm that the bullets recovered from Simmons' body matched the gun that was placed into evidence. Accordingly, Evans' claim that trial counsel was ineffective for failing to present evidence that a gunpowder residue test and "forensic scene test" were not conducted, fails to identify any existing evidence about the lack of testing. See *Deleon*, 227 Ill. 2d at 337. Accordingly, Evans failed to rebut the presumption that he received reasonable assistance from postconviction counsel. The trial court properly dismissed Evans' postconviction petition.

¶ 67                                    III.  CONCLUSION

¶ 68    Based on the foregoing reasons, we affirm the decision of the trial court.

¶ 69       Affirmed.